JOHN H. BURKE *vs.* JOHN J. DOREY & others.

Suffolk. November 29, 1910. — February 28, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction*, To reach and apply equitable assets. *Equity Pleading and Practice*, Appeal, Master's report. *Attorney at Law.*

Where a report of a master, to whom a suit in equity was referred, does not contain a report of the evidence, an appeal from a decree overruling exceptions to findings of fact by the master cannot be considered.

One, who sought the services of an attorney at law, at the attorney's request gave
him a demand note for $2,500 bearing semiannual interest and the attorney gave
back a receipt stating that the note was received "for retainer, for services ren-
dered and to be rendered" in a certain equity suit then pending, which the
attorney agreed "to press ... for final hearing as rapidly as possible and to make
no compromise of any sort .,. . without the assent of" the client. Thereafter
the attorney "proceeded in the suit as rapidly as possible and with due fidelity."
In less than six months after the date of the note and before the equity suit was
brought to a final hearing, the attorney brought a suit in equity seeking to reach
and apply in payment of the note certain property of the client which he alleged
had been conveyed to another to avoid attachment by the client's creditors.
*Held*, that such suit by the attorney was not brought prematurely.

A suit in equity, to reach and apply in satisfaction of a debt due to the plaintiff
property which the principal defendant was alleged to have conveyed fraudu-
lently to a second defendant for the purpose of avoiding attachment by cred-
itors, was referred to a master. The defendants contended that the conveyance
was made in good faith to secure the second defendant for advances made by
him for the first defendant. In his report the master without reporting the evi-
dence found that the property had been conveyed fraudulently as alleged, and
also found that the second defendant had paid certain obligations of the princi-
pal defendant and had given a bond to dissolve an injunction issued in another
suit in equity against the principal defendant. He also refused to believe cer-
tain testimony as to obligations of the principal defendant to the second defend-
ant and documentary evidence with regard thereto. The defendant excepted
to the report on the ground that the findings of the master that the conveyance
was fraudulent and that the second defendant paid out money for the principal
defendant were inconsistent. *Held*, that the exception must be overruled because
for aught that appeared the master might have found that the payments by the
second defendant for the first, referred to in the report, were made pursuant to
and in furtherance of the alleged fraud, which finding could not be said to have
been wrong as matter of law.

If one makes a conveyance of his property with the intent of hindering, delaying or
defrauding future as well as existing creditors, the property so conveyed may be
reached by one, who afterwards becomes a creditor, in satisfaction of his debt
although the conveyance itself did not render the debtor insolvent.

BILL IN EQUITY, filed in the Superior Court on July 23, 1909,
seeking to reach and apply, in payment of a demand note for
$2,500 of the defendant Dorey to the plaintiff, the defendant
Dorey's interest in a certain mortgage and mortgage note of one
Mary A. Linnehan and in seventy-five shares of the capital stock
of the American Sugar Refining Company, both of which the
defendant Dorey was alleged to have conveyed without consid-
eration to the defendant Bryne "upon a scheme between himself
and said Dorey to prevent the same from being come at to be
attached by the creditors of" Dorey.

The note of the defendant Dorey to the plaintiff was as
follows:

" $2500.                              Boston, March 15, 1909.

" For value received I John J. Dorey promise to pay to John H. Burke or order the sum of twenty-five hundred dollars on demand from this date, with interest semi-annually at the rate of five per cent. per annum, during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid.

" Witness,

"John J. Dorey."

The agreement of the plaintiff with the defendant Dorey was as follows:

"Boston March 15 1909.

" Received of John J. Dorey a note and mortgage for twenty-five hundred dollars for retainer, for services rendered & to be rendered in the equity suit now pending in the County of Suffolk, wherein Nellie A Dorey & John W. Dorey are complainants & said John J. Dorey is defendant & in which there is a cross bill filed. I agree to press the case for final hearing as rapidly as possible and to make no compromise of any sort in said suit without the assent of said John J. Dorey. This note & Mortgage is rec'd in full payment for services rendered & to be rendered in all litigation now pending between said parties

"John H. Burke."

The suit was referred to Stephen H. Tyng, Esquire, as master. Findings in the report of the master which are material to the decision are stated in the opinion. Both defendants objected and excepted to the master's report. The report was confirmed by *Pierce,* J., and a decree was made granting the prayers of the bill. Both defendants appealed. Only the defendant Bryne prosecuted his appeal in this court.

*H. L. Whittlesey,* for the defendant Bryne.

*R. Walsworth & J. H. Burke,* for the plaintiff.

MORTON, J.   This is a bill to reach and apply in payment of a note on demand for $2,500, dated March 15, 1909, given by the defendant Dorey to the plaintiff, certain property alleged to have been fraudulently conveyed by said Dorey to the defendant Bryne. The case was referred to a master. Objections were made and exceptions taken to the master's report by the defendants Dorey and Bryne. The exceptions were overruled and the

master's report confirmed, and a final decree was entered in favor of the plaintiff that the defendant Bryne held the Linnehan mortgage and note and the seventy-five shares of stock in the American Sugar Refining Company in trust and for the benefit of the defendant Dorey, and ordering him to produce, assign and deliver the same to the clerk to be sold and applied in satisfaction of the plaintiff's debt. Both the defendant Bryne and the defendant Dorey appealed. Dorey has not appeared to prosecute his appeal in this court.

The question of fraud is almost wholly one of fact. *Cook* v. *Holbrook*, 146 Mass. 66. The evidence is not before us, and so far as the exceptions to the report are based upon the contention that the findings of the master were not warranted by the evidence it is manifest that we are not in a position to pass upon the contention thus made.

At the time when the note was given, the defendant Dorey was engaged in a suit to recover some property in Somerville which he had mortgaged as security for a note of $27,000, dated July 2, 1907, to his son John W. Dorey and his wife Nellie E. Dorey. Previous to giving the note to the plaintiff, Dorey had applied to him to act as counsel for him in that suit, and the note was given as a retainer and for services rendered and to be rendered in said suit. The plaintiff in writing agreed " to press the case for final hearing as rapidly as possible and to make no compromise . . . in said suit without the assent of said John J. Dorey." The defendant Dorey was to make payments on the note from time to time, but did not do so. This suit was begun before the case was brought to a final hearing, and one contention of the defendants is that it was prematurely brought. The master finds " that the plaintiff proceeded with said suit as rapidly as possible and with due fidelity." The note is an absolute promise to pay on demand with interest, and there is nothing in it or in the written agreement to prevent the plaintiff from bringing this suit to enforce its payment. The defendant does not, and according to the findings of the master could not, successfully, contend that the note was invalid for want of consideration.

The Linnehan mortgage was assigned by the defendant Dorey to one Skinner, his niece, in July, 1907. The master finds that it remained subject to the control of Dorey and that this and

other property, comprising a large part of what Dorey possessed, was transferred by him to prevent his creditors from attaching it. The sugar stock was transferred by him to Bryne in the latter part of 1907. The Linnehan mortgage was subsequently transferred by Skinner to Bryne, who was a nephew of Dorey, after Dorey had applied to the plaintiff to act for him in the litigation referred to above. According to the report Dorey and Bryne both contended at the hearing before the master that the Linnehan mortgage and the sugar stock with other property were transferred to Bryne to secure him for large sums of money advanced by him to Dorey from time to time, and for moneys collected by Dorey on contracts assigned to him by Bryne. Bryne testified, as stated in the report, that he and Dorey had had an accounting at one time and that Dorey had given him a note for $7,000, which he afterwards gave up to him. He also, as the report sets out, produced thirty notes from Dorey to himself, aggregating $5,477.25, in addition to the $7,000 note. The master found that on January 23, 1909, the defendant Bryne settled a judgment for $1,500, obtained against Dorey by one Augustine J. Daly, for legal services, by giving his own check for $1,674.50, and that he also had paid another attorney employed by Dorey $400 in settlement of his claim, and had given a bond of $2,500 to dissolve an injunction issued in the suit of Daly against Dorey to restrain the latter from disposing of the property mentioned in the bill. The master found that Byrne had advanced to Dorey various sums of money amounting to $3,056, which was admitted by the plaintiff. But he disbelieved Dorey and Bryne in regard to the alleged accounting and the $7,000 note and the other notes purchased by Bryne, saying that "a careful inspection of them and other evidence satisfies me that they and said $7,000 note were all made at one time and for the purpose of giving color to the claim that said Bryne had advanced the principal defendant [Dorey] large sums of money"; and he found "that said three mortgages, [one of which was the Linnehan mortgage] . . . said $27,000 note of July 2, 1907, and said sugar stock were transferred by said Dorey to said Bryne to defraud, delay and hinder his creditors, and that said Bryne in taking the same knew that such was the intent of said Dorey, and that his participation in the transac-

tions was solely to enable said Dorey to accomplish that intent, and preserve said property for the benefit of the principal defendant [Dorey] upon a secret trust."

The defendant contends that the finding in regard to the payments made by the defendant Bryne to and on account of Dorey are inconsistent with the finding that the property was fraudulently conveyed. But for aught that appears the master may have found that the payments and advances were made pursuant to and in furtherance of the alleged fraud. It cannot be said that if he did so find he was wrong as matter of law.

The defendant Bryne further contends that, the alleged fraudulent transfers having been made before the time when Dorey became indebted to the plaintiff and Dorey being at the time solvent, as appears from the master's report, and retaining in his hands property largely in excess of his indebtedness, the transfers in question could not be found to have been fraudulent as against the plaintiff. But a conveyance may be fraudulent in regard to subsequent creditors as well as existing creditors, if so intended. *Winchester* v. *Charter*, 12 Allen, 606. The master has found in the present case that that was the purpose with which the conveyances were made. Moreover it should be observed that the Linnehan mortgage does not appear to have been transferred to Bryne until after Dorey had retained the plaintiff.

It is suggested in the brief of the defendant Bryne that the plaintiff was not deceived in regard to the alleged fraudulent conveyance when he took the note in suit. There is no finding whether he was or was not deceived. But if he was not, we do not see how it could affect his right of recovery. It is not contended that he participated in the alleged fraudulent transfers.

The defendant Bryne argues that it is apparent from the report itself that the master came to erroneous conclusions in regard to material questions of fact. In effect the argument is that he should have believed Bryne and Dorey. But the degree of credibility to which they were entitled was plainly for the master to decide, and no appeal from or exception to his findings in relation thereto lies.

*Decree affirmed.*